**SO ORDERED.**

**SIGNED this 16 day of November, 2011.**



*Stephani W. Humrickhouse*
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| **RICKY VERLIN MURRAY** <br> **CONNIE BROUGHTON MURRAY** | 10-10143-8-SWH |
| **DEBTORS** | |
| | |
| **BRANCH BANKING AND TRUST COMPANY** | |
| Plaintiff | ADVERSARY PROCEEDING NO. |
| v. | 11-00143-8-SWH-AP |
| **RICKY V. MURRAY, CONNIE B. MURRAY,** <br> **CASTLEBROOK PROPERTIES, LLC,** <br> **BRIGHTSTAR PROPERTIES, LLC, and EAST** <br> **WAKE PROPERTIES, LLC** | |
| Defendants. | |

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

The matter before the court in this adversary proceeding is the motion of the plaintiff, Branch Banking and Trust Company ("BB&T"), for summary judgment. A hearing took place in Raleigh, North Carolina, on September 12, 2011, at which time all parties expressly consented to the entry of final orders by this court.

## Background

Defendants Ricky V. Murray and Connie B. Murray (the "Debtors" and "Individual Defendants") filed a joint petition for relief under chapter 11 of the Bankruptcy Code on December 10, 2010. The Murrays hold one hundred percent ownership interests in Defendants Castlebrook Properties, LLC ("Castlebrook"), Brightstar Properties, LLC ("Brightstar"), and East Wake Properties, LLC ("East Wake") (collectively, referred to as "Corporate Defendants") (Individual Defendants and Corporate Defendants collectively referred to as "Defendants"). Two of the Corporate Defendants, Castlebrook and East Wake, were administratively dissolved on February 25, 2009 by the North Carolina Secretary of State.

Before the petition date, Defendants became obligated to BB&T pursuant to various promissory notes secured by deeds of trust, all of which were cross-collateralized. The following chart sets forth the debts, obligors, and guarantors for each such loan:

| Date/Original Loan Amount | Obligor | Guarantor |
|---|---|---|
| 4/12/04<br>$869,000 | Castlebrook #1 | Connie Murray<br>Ricky Murray<br>Brightstar<br>East Wake<br>Lisa Dee's Florist |
| 12/15/06<br>$1,302,373 | Castlebrook #2 | Connie Murray<br>Ricky Murray<br>Brightstar<br>East Wake<br>Lisa Dee's Florist |
| 12/19/08<br>$454,450 | Castlebrook #3 | Connie Murray<br>Ricky Murray<br>Brightstar<br>East Wake<br>Lisa Dee's Florist |
| 3/3/08 | Castlebrook | Connie Murray |

|  | Swap | Ricky Murray<br>Brightstar<br>East Wake<br>Lisa Dee's Florist |
|---|---|---|
| 4/12/04<br>$188,033 | East Wake #1 | Connie Murray<br>Ricky Murray |
| 8/6/04<br>$60,491 | East Wake #4 | Connie Murray<br>Ricky Murray |
| 4/12/04<br>$291,000 | Brightstar #1 | Connie Murray<br>Ricky Murray |
| 12/15/06<br>$25,000 | Connie Murray #1 | Ricky Murray |

A listing of the properties and ownership thereof prior to the transfers in question is set forth in Exhibit 1 to the Complaint.

The Defendants defaulted on their loan obligations and BB&T made demand for payment on or about September 1, 2010. BB&T initiated foreclosure proceedings on September 21, 2010, and foreclosure orders scheduling the sales for the afternoon of December 1, 2010 were entered by the Wake County Superior Court on October 14, 2010. On the morning of December 1, 2010, the Corporate Defendants conveyed all of their real property to the Debtors by non-warranty deed: one parcel from Castlebrook, eleven parcels from East Wake, and three from Brightstar (the "Transferred Property"). That afternoon, the foreclosure sales were held, but during the ten-day upset bid period, on December 10, 2010, the Debtors filed their chapter 11 bankruptcy petition. The Debtors listed all of the Transferred Property as assets on their schedules.

As of the petition date, Brightstar owed BB&T, exclusive of guarantor obligations, the sum of $265,466.73; Castlebrook owed BB&T, exclusive of guarantor obligations, the sum of $2,844,273.50; and East Wake owed BB&T, exclusive of guarantor obligations, the sum of

$195,757.83. On March 21, 2011, BB&T obtained judgments against the defendants in Wake County Superior Court on the notes and guarantees as follows: Brightstar $3,154,663.49; Castlebrook $2,841,168.29; and, East Wake $3,071,470.81.

BB&T initiated this adversary proceeding seeking to avoid the transfers of the Corporate Defendants to the Debtors as fraudulent transfers under state law, and because certain of them were made *ultra vires*. BB&T moved for summary judgment on May 27, 2011.

## Discussion

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). In making this determination, conflicts are resolved by viewing all facts and inferences to be drawn from the facts in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962) (per curiam). Summary judgment is not a "disfavored procedural shortcut," but an important mechanism for filtering out "claims and defenses [that] have no factual basis." Celotex, 477 U.S. at 327, 106 S. Ct. at 2555. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323, 106 S. Ct. at 2552. Summary judgment should not be granted "unless the moving party has established his right to a judgment with such clarity as to leave no room for controversy." Portis v. Folk Constr. Co., 694 F.2d 520, 522 (8th Cir. 1982) (internal quotations omitted).

BB&T seeks to avoid the transfers of the Corporate Defendants' property to the Debtors pursuant to the following North Carolina statutes: N.C. Gen Stat. §§ 39-23.4(a)(1) and (a)(2), 39-

23.5, and 57C-6-01 *et seq*. Additionally, BB&T seeks a declaratory judgment that the Transferred Property is not property of the estate. North Carolina General Statute § 39-23.4(a)(1) provides that a transfer made by a debtor is fraudulent if the debtor made the transfer "[w]ith intent to hinder, delay, or defraud any creditor of the debtor." N.C. Gen. Stat. § 39-23.4(a)(1). In determining intent, subsection (b) of the statute lays out thirteen factors that may be weighed to determine the intent of the debtor.[1] Official Comment 5 to the statute states that:

> Subsection (b) is a nonexclusive catalogue of factors appropriate for consideration by the court in determining whether the debtor had an actual intent to hinder, delay, or defraud one or more creditors. Proof of the existence of any one or more of the factors enumerated in subsection (b) may be relevant evidence as to the debtor's actual intent *but does not create a presumption that the debtor has made a fraudulent transfer* . . .

N.C. Gen. Stat. § 39-23.4, Official Comment 5 (emphasis added). Under the statute, the factors provide examples of evidence of intent to defraud, but actual intent still must be proven.

It is clear that some of the factors under the statute are implicated by the transfers from the Corporate Defendants to the Debtors. For example, the Debtors are insiders of the Corporate Defendants, from whom they received the Transferred Property. Such a factor may be relevant

---

[1] Consideration may be given as to whether: "(1) The transfer or obligation was to an insider; (2) The debtor retained possession or control of the property transferred after the transfer; (3) The transfer or obligation was disclosed or concealed; (4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) The transfer was of substantially all of the debtor's assets; (6) The debtor absconded; (7) The debtor removed or concealed assets; (8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) The transfer occurred shortly before or shortly after a substantial debt was incurred; (11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor; (12) The debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor reasonably should have believed that the debtor would incur debts beyond the debtor's ability to pay as they became due; and (13) The debtor transferred the assets in the course of legitimate estate or tax planning." N.C. Gen. Stat. 39-23.4(b).

evidence of the actual intent of the Defendants, but does not raise a presumption that a fraudulent transfer occurred. On the issue of intent, BB&T cites, among other cases, Hinsley v. Boudloche (In re Hinsley), in which the Fifth Circuit upheld the avoidance of a transfer of property upon a finding of fraudulent intent at the summary judgment stage. 201 F.3d 638 (5th Cir. 2000). In that case, a married couple partitioned their community property shortly before Mr. Hinsley filed a petition for bankruptcy protection, and the bankruptcy trustee sought to reach assets transferred to Mrs. Hinsley for the benefit of the estate. The trustee presented evidence suggesting that 8 of the 11 badges of fraud under the relevant statute were present, and in response, Ms. Hinsley merely submitted an affidavit stating her belief of the value of the assets and that the transfers were part of an effort toward reconciliation of the Hinsleys' troubled relationship. The court found that there was no evidence to support the debtors' position other than Mrs. Hinsley's self-serving statements regarding intent, and held that "[a] party's self-serving and unsupported claim that she the lacked the requisite intent is not sufficient to defeat summary judgment where the evidence otherwise supports a finding of fraud." Id. at 643. Also important to the court was the net effect of the partition: valuable assets were removed from Mr. Hinsley's ownership, making them unavailable to judgment creditors of his bankruptcy estate. As a result, the court concluded that the evidence *as a whole* supported avoidance of the partition as fraudulent.

In this case, however, there is evidence of non-fraudulent intent in making the transfers. The Debtors claim they had no intent to defraud BB&T. In fact, they claim that their actual intent was to assist the Corporate Defendants to reorganize their debts. Those debts were guaranteed by the Individual Debtors and the Corporate Defendants. Those debts were also secured by deeds of trust which contained cross-collateralization provisions. Objection to Use of Cash Collateral, ¶ 36. The

6

Debtors argue that since BB&T has the same collateral, the same obligors, and the same indebtedness after the transfer as it did before, it has not been "hindered, delayed or defrauded." Additionally, the Debtors contend that the filing of one, instead of four, petitions was both administratively and financially more efficient. As a result of the Debtors' contentions, there are genuine factual disputes regarding the intent of the Defendants and the effect of the filing of the petition, rendering summary judgment inappropriate.

Moreover, courts have been hesitant to allow summary judgment in cases involving fraudulent intent. See, e.g., Allman v. Walker (In re Cansorb Indus. Corp.), Adv. Pro. No. 07-6072 (Bankr. M.D.N.C. Nov. 20, 2009) ("[S]ummary judgment is generally not appropriate for the disposition of a fraudulent transfer claim based on actual intent because the debtor's subjective intent is at issue"); see also, Farmers Bank of Sunbury v. Elizabeth City, 54 N.C. App. 110, 115 (N.C. App. 1981, citing Smith v. Currie, 40 N.C. App. 739, 742 (N.C. App. 1979), disc. rev. denied, 297 N.C. 612 (N.C. 1979), 6 Moore's Federal Practice, ¶ 56.17 [41.1] (1978) ("[S]ummary judgment is inappropriate when issues such as motive, intent, and other subjective feelings and reactions are material"). Because the question of whether the Corporate Defendants fraudulently transferred property to the Debtors essentially hinges on the Debtors' intent, summary judgment is not appropriate at this point in the case.

BB&T also contends that a fraudulent transfer occurred as a matter of law under N.C. Gen. Stat. § 39-23.4(a)(2) because the Defendants transferred real property in exchange for less than reasonably equivalent value. The pertinent part of the statute states that a transfer made by a debtor is fraudulent if the debtor made the transfer "[w]ithout receiving a reasonably equivalent value in exchange for the transfer," and the debtor:

> (a) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> (b) Intended to incur, or believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

N.C. Gen. Stat. § 39-23.4(a)(2).

BB&T contends that no consideration was given for the transfers from the Corporate Defendants to the Individual Defendants. There is no dispute that the Individual Debtors did not "pay" for the Transferred Properties. The Defendants contend that the value given for the transfer was not cash but the promise to finance a bankruptcy case which administered all the property and debts of the Defendants, while remaining obligated on all the outstanding debts of the Corporate Defendants. As of July, 1, 2011, the Individual Defendants assert they have paid approximately $47,249.51 in financing litigation, and that a portion of those costs were expended for the benefit of the Corporate Defendants. Plaintiff has cited no support for the proposition that advancing litigation costs cannot as a matter of law constitute value and the equivalence of that value is open to factual dispute.

Furthermore, if there was no equity in the Transferred Properties, as the Debtors contend, no value was in fact transferred to the Individual Defendants. According to the Debtors, all of the loans were cross-collateralized among the Corporate Defendants, and personally guaranteed by the Individual Defendants. As a result, if there was zero value transferred then the receipt of zero value in exchange is, arguably, equivalent. The court also has some concern regarding whether the remaining provisions of the statute can be satisfied as a matter of law. There is no evidence of any business or transaction that the Corporate Defendants were engaged in or about to engage in, or debts such parties intended to incur. The debts had already been incurred and the ability of the

8

Defendants to pay those debts owed to BB&T did not change as a result of the transfer. If the remaining provisions of the statute are to be satisfied, additional evidence will need to be offered, and summary judgment is certainly not available at this point.

BB&T next contends it is entitled to summary judgment because the transfers are constructively fraudulent under N.C. Gen. Stat. § 39-23.5. Under the statute, a creditor must show: "(1) the existence of a creditor whose claim arose before the transfer was made or the obligation was incurred; (2) the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation; and (3) the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." Watts v. Slough (In re Slough), Adv. Pro. No. 04-00015-8-JRL (Bankr. E.D.N.C. August 25, 2005). Although it is undisputed that BB&T satisfies the first element, and that the existence of the third element is probable, as discussed above, the existence of the second element is subject to factual dispute, and therefore summary judgment is inappropriate.

Additionally, BB&T contends that it is entitled to void the transfers as a matter of law because the transfers by Castlebrook and East Wake were *ultra vires*. BB&T argues that Castlebrook and East Wake did not comply with N.C. Gen. Stat. § 57C-6-05 when they transferred their respective properties to the Individual Defendants instead of distributing those assets first to their creditors. As a result of this failure, BB&T contends that the transfers are void. The problem with BB&T's position is that the statute does not provide for a remedy in the event of non-compliance. The court, therefore, has discretion to fashion a proper remedy. Though the transfers may have been *ultra vires*, they in no significant manner caused any harm to BB&T. The complete, and extensive cross-collateralization of BB&T's debt fully protects it. The transfers which were

not effectuated in accordance with § 57C-6-05 did not change the amount of the debt, the obligors on the debt, or the collateral securing the debt. The court is not persuaded that avoidance of the transfers would be an equitable result under the circumstances.

Similarly and finally, BB&T contends it is entitled to summary judgment as to its declaratory action because as a result of the Defendants' fraud the transfers failed to convey property to the Debtors' estate as a matter of law. It argues that the Transferred Property was fraudulently transferred and should be removed from the estate as the remedy for such fraud pursuant to North Carolina's version of the Uniform Fraudulent Transfer Act. N.C. Gen. Stat. § 39-23.7(a)(1). Inasmuch as it is premature to deal with the issue of fraud in this case on a motion for summary judgment, it is also premature to grant summary judgment on the declaratory judgment count.

Based on the foregoing, plaintiff's motion for summary judgment is **DENIED**.

**SO ORDERED.**

## END OF DOCUMENT